JOHN E. KUHN, JR.
United States Attorney

GEORGE TRAN
STEPHAN COLLINS
Assistant United States Attorneys
Federal Building & U.S. Courthouse
222 West Seventh Avenue, #9, Room 253
Anchorage, Alaska 99513-7567
Tel: (907) 271-5071
Fax: (907) 271-1500
E-mail: george.tran@usdoj.gov
        stephan.collins@usdoj.gov

Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Case No. 3:20-cr-00090-JMK |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| JASON ACHILLES MCANULTY, | ) | |
| a/k/a/ "Snoop," | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**GOVERNMENT'S TRIAL BRIEF**

The United States of America hereby submits this trial brief for the upcoming jury

trial scheduled to begin on March 21, 2022.

//

1

## A. INTRODUCTION

The defendant, Jason Achilles McAnulty, is charged with two counts of distributing heroin.   Defendant sold approximately 101 grams of heroin for $5,000 cash on June 17, 2020 during a controlled buy.   He then sold approximately 25 grams of heroin for $1,300 cash on June 26, 2020 during a second controlled buy.   Both investigations were conducted in Anchorage by joint participation from the Anchorage Police Department (APD) and Federal Bureau of Investigation (FBI).

Trial is scheduled to begin on March 21, 2022.   The government expects to call eleven witnesses and present its case-in-chief in approximately two days.

## B. SUMMARY OF THE CHARGES

### 1. Element of the Offense

The defendant is charged with two violations of federal law.   As alleged in Count One of the Indictment, the defendant distributed 100 grams or more of a mixture and substance containing a detectable amount of heroin in violation of Title 21, United States Code, Section 841(a)(1), (b)(1)(B).   As alleged in Count Two of the Indictment, the defendant distributed a mixture and substance containing a detectable amount of heroin in violation of Title 21, United States Code, Section 841(a)(1), (b)(1)(C).

The elements[1] of Count One are as follows:

First, the defendant knowingly distributed heroin; and

---

[1] These elements are taken from Instruction 9.18 of the Ninth Circuit Model Jury Instructions, 2010 Edition.   A similar instruction was explicitly approved in *United States v. Houston*, 406 F.3d 1121, 1122 n.2 (9th Cir. 2005).

2

Second, the defendant knew that it was heroin or some other federally controlled substance.

To "distribute" means to deliver or transfer possession of methamphetamine to another person, with or without any financial interest in that transaction.

### 2. Amount of Heroin

The indictment charges the defendant with distribution of an amount of drugs in Count One—100 grams or more—that increases the prescribed statutory maximum sentence, and carries a mandatory minimum sentence of 10 years given his final conviction for serious violent felony. *See* 21 U.S.C. § 841(b)(1)(B)(i). As a result, the amount of drugs must be decided by a jury beyond a reasonable doubt. *See United States v. Garcia-Guizar*, 234 F.3d 483, 488 (9th Cir. 2000). "[T]he government must prove beyond a reasonable doubt the specific type and the quantity of substance involved in the offense, but not the defendant's knowledge of (or intent) with respect to that type and quantity. *United States v. Collazo*, 984 F.3d 1308, 1329 (9th Cir. 2021). Accordingly, the United States will request a separate instruction and a verdict form, consistent with Ninth Circuit Model Jury Instruction 9.16 and 9.19.

### 3. Enhanced Statutory Penalty

The indictment also alleges that the Defendant committed the offense charged in Count One after he had a final conviction entered in the Superior Court of the State of Alaska in case 3PA-01-1919 for Robbery in the First Degree in violation of Alaska Statute § 11.41.500(a)(1), which he served more than 12 months of imprisonment.

3

"Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt."   Therefore, the fact of Defendant's prior conviction is not subject to a jury finding of beyond a reasonable doubt.   *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000).

### C.  STATEMENT OF THE CASE

On June 16, 2020, Mabelline Arthur provided information as a confidential source[2] and alerted APD Task Force Officer ("TFO") David Aldridge that an individual named Jason McAnulty, also known to her as "Kevin" and/or "Snoop," was a source of heroin supply in the Anchorage area.   She provided his phone number, (907) 205-1906, and law enforcement confirmed that that number was indeed associated with defendant.

Arthur stated she made multiple purchases of heroin from defendant in the past six months and provided recent text messages of their exchanges, including a discussion of the poor quality of heroin she had received from defendant, in the days leading up to the first controlled buy.   Law enforcement then conducted two controlled buys.

Controlled Buy #1

The following day on June 17, around 4:11 pm, TFO Aldridge instructed Arthur to arrange the purchase of heroin from defendant.   Arthur confirmed that defendant had heroin to supply but that he was unavailable for a few hours.   Around 8:28 pm, Arthur

---

[2] Arthur's identity has been previously disclosed to defense counsel, and her identity is now being revealed publicly in light of the trial and her anticipated public testimony.

telephoned TFO Aldridge letting him know that defendant was ready to fulfill a purchase request.   TFO Aldridge instructed CI to place an order for four (4) ounces of heroin.

TFO Aldridge then conducted an operational briefing at APD with other officers and assigned roles for the controlled buy operation.   TFO Aldridge remained as Arthur's handler.   Detective Mikel Vondolteren obtained $5,000 in U.S. currency and provided it to TFO Aldridge for the operation.   Detective Robert Blanton searched Arthur's car at APD for any contraband following the briefing.   FBI Special Agent North searched Arthur's belongings and person to ensure there were no hidden contraband.

Once the briefing concluded, the operation moved forward.   TFO Aldridge provided Arthur with the $5,000 of pre-recorded buy funds.   At 9:14 pm Arthur and TFO Aldridge got into their respective cars and drove to the defendant's residence at 8101 Peck Avenue, Unit C23, (hereinafter "buy location") to complete the purchase.   TFO Aldridge followed Arthur.   There were no stops at any other location before arriving to the buy location.   Arthur arrived at the buy location at around 9:27 pm, at which point the surveillance team took over observing her moves.

Detectives Vondolteren, Blanton, and Sergeant Gregory Witte were assigned to the surveillance team, and stationed themselves at various locations throughout the apartment complex at the buy location prior to Arthur's arrival.   At 9:12 pm, Sergeant Witte saw defendant exit the garage with a garbage can.   At 9:30 pm, Detective Vondolteren saw Arthur arrive; she parked at the visitor parking area, then exited her car and walked to unit C23.   Sergeant Witte observed Arthur approach unit C23 at 9:31 pm.

5

At 9:33 pm, he saw her enter the unit. Five minutes later at 9:38 pm, he observed her leaving the unit and walking east bound back towards her car. Detective Vondolteren then saw Arthur, at 9:39 pm, walk back to her car in the visitor parking area, enter her car, and drove out of the complex.

TFO Aldridge observed Arthur exit the complex, turning onto Peck Avenue, and he followed. He then called Arthur and directed her to meet at a pre-determined staging area. Once at the staging area, at 9:43 pm, TFO Alridge took custody of a clear plastic sandwich bag that was half full of a dark brown substance. TFO Aldridge and Arthur thereafter returned to the post buy location at APD, arriving at 9:50 pm. There, they debriefed. Arthur stated that defendant took her into the kitchen where she paid him $1250 per ounce of heroin for a total of $5000 for four ounces. She saw him weigh out the heroin on a scale and saw the weight as 101 grams. She then saw him put the heroin into the sandwich bag. When Arthur gave defendant that $5000, he counted it in front her. Once the money was counted, she walked out of his apartment and back to her car.

Detective Blanton conducted another search of Arthur's car after the completion of the buy and located no contraband. FBI Special Agent North also searched Arthur's belongings and person again after the buy to ensure there were no hidden contraband.

Detective Blanton then assisted Sergeant Witte with the packaging of the suspected heroin purchased from defendant. Blanton weighed the contraband, indicating 103.4 grams with the bag. Blanton then placed the contraband in an evidence envelope

6

with Tag #1237147, sealed and signed it, and provided it to Detective Henikman to drop into the evidence locker.

Controlled Buy #2

On June 24, 2020, TFO Aldridge informed Arthur through text message that he wanted her to complete another controlled buy with defendant.   TFO Aldridge then met Arthur on the same day to arrange paperwork that would authorize the recording of this second controlled buy.

On June 25, 2020, TFO Aldridge arranged with Arthur to conduct the second buy. They met around 5:30 pm and TFO conducted a briefing.   At 8:00 pm, Arthur texted defendant asking him if he was "good."   Defendant responded but stated he was out of town that day until late.   TFO Aldridge decided to cancel the operation that day.

On June 26, 2020, TFO Aldridge received a message from Arthur around 10:16 am, stating defendant would be available to fulfil a heroin purchase around 11:00 am. She had sent a text message to defendant asking to "come see you in an hour or so" and he confirmed "Yeah."   TFO Alridge launched an operational briefing at 11:32 am and assigned roles for this second controlled buy.

TFO Aldridge remained Arthur's handler.   Detective Mikel Vondolteren obtained $1,300 in U.S. currency and provided it to TFO Aldridge for this operation.   Detective Jesse Kinsland and FBI Special Agent North searched Arthur's car at APD for any contraband following the briefing.   North also searched Arthur's belongings and person

to ensure there were no hidden contraband.   This second operation was also audio recorded, and TFO Aldridge set up the recording device and provided it to Arthur.

TFO Aldridge provided Arthur with the $1,300 of pre-recorded buy funds.   He did not direct her to buy a specified quantity in this second buy.   Arthur texted defendant at around 11:38 am stating she was on her way to his place.   At 11:53 am Arthur and TFO Aldridge got into their respective cars and drove to the buy location (3101 Peck Ave.) to complete the purchase.   TFO Aldridge, along with Detective Jesse Kinsland in the same car, followed Arthur.   At 11:59 am, Arthur texted defendant that she was "5 min" away.   There were no stops at any other location before she arrived at the buy location at approximately 12:05 pm

Sergeant Witte set up surveillance at the buy location and had a clear line of sight to the front door of the buy location.   At 11:53 am, he observed defendant park and exit from a vehicle, carrying a cardboard box up to unit C23.   At 12:06 pm, Sergeant Witte then saw Arthur approach the front door of unit C23.   Arthur had also texted defendant at 12:06 pm that was she "Walking up."   After about a minute, she entered the unit at 12:07 pm.

Arthur was inside the unit for about five minutes.   During this time, she made small talk with defendant, said hi to his cat, and then stated, "I need one – one for one yeah," in reference to asking for one ounce of heroin.   She made more small talk and then asked, "So what's the ticket?"   She then told him that she "only brought 13," in reference to the $1,300.  Arthur saw Defendant weigh the heroin on a digital scale and

8

confirmed that he weighed out 25 grams (slightly less than an ounce). He then placed it in a sandwich bag. Arthur handed defendant $1,300, and he counted it again. Arthur then left the unit.

At 12:12 pm, Sergeant Witte saw her leave the unit. The audio recording also marked that she entered the unit at 15:44 and that she left the at 20:55, spanning consistently with the five minutes observed by Sergeant Witte. Witte remained at the unit and saw defendant a few more times exiting and reentering his residence.

At 12:13 pm, Arthur drove out of the complex, and TFO Aldridge and Detective Kinsland kept a visual on her car until they met at a pre-determined staging area. TFO Aldridge contacted Arthur at this staging area and retrieved the sandwich bag containing the dense dark brown material that she bought from defendant. He then instructed Arthur to follow him to the post buy location at APD station. Once at the post buy location, TFO Aldridge handed Detective Kinsland the sandwich bag containing the dark brown material for processing.

Detective Kinsland conducted another search of Arthur's car after the completion of the buy and located no contraband. FBI Special Agent North also searched Arthur's belongings and person again after the buy to ensure there were no hidden contraband. Afterwards, Detective Kinsland packaged the suspected heroin. It weighed 27 grams with the bag. Kinsland then placed the contraband in an evidence envelope with Tag #1237093, sealed and signed it, and dropped it into the evidence locker.

TFO Aldridge then requested both evidence tag numbers 1237147 and 1237093 to be analyzed by the State of Alaska Department of Public Safety's Scientific Crime Detection Laboratory. Forensic Scientist Carlie Glaister (formerly Carlie Bailey) analyzed (1) Evidence Tag # 1237147 and confirmed that the controlled substance purchased from defendant on June 17, 2020 contained heroin with a net weight of 101.90 grams; and (2) Evidence Tag # 1237093 and confirmed that the controlled substance purchase from him on June 26, 2020 contained heroin with net weight of 25.44 grams.

Premises Search & Arrest

On July 15, 2020, following the two controlled buys, TFO Aldridge executed a search warrant with other APD officers at defendant's residence, 3101 Peck Avenue, Unit C23. Over $34,922 in cash, other contraband, and indicia of distribution were located there. The cash was seized and entered in evidence as well as a note about drug distribution. Officers also located numerous paperwork with defendant's name on it throughout the residence. Defendant was not present, but his partner, K.P., was present. On the same day, Officer Jackson stopped Defendant while he was driving and detained him as part of this investigation. Defendant was later arrested at the station. Defendant was found in possession of an Apple iPhone and $816.00 cash.

**D. WITNESSES**

At trial, the government intends to call some or all of the following witnesses in its case-in-chief. The United States reserves the right to call additional witnesses.

//

### 1. David Aldridge

APD TFO David Aldridge was the lead investigator in this case. He was also the handler for the source (Arthur). TFO Aldridge will testify about the investigation, its origins, and the operation of the two controlled buys, including the ways in which each controlled buy was conducted and monitored. TFO Aldridge will also testify about the identification of defendant in this case, after being alerted by Arthur that defendant was a source of heroin supply. He will further testify about his observations, including the steps he took to monitor the activities of the participants before, during, and after both controlled buys, including steps taken to ensure the integrity of the investigation. TFO Aldridge will also testify about the seizure of the purchased heroin that was later sent to the State of Alaska lab for testing.

The United States also intend to seek testimony from TFO Aldridge related to Arthur's purchase of heroin from defendant in the months leading up to June 2020, as it is the basis in explaining Arthur's knowledge that defendant was indeed a heroin supplier. This also includes introducing text messages between Arthur and defendant from June 7 through June 13 of 2020 in the days leading up to the first controlled buy. See Exhibit 1. These text messages are inextricably tied to the controlled buys and participation of Arthur in this case, as they further demonstrate that Arthur communicated several times to meet up to buy heroin from defendant and even discussed issues with the quality of recently obtained heroin from defendant. These successive messages show knowledge and mutual understanding of their otherwise vague discourse involved in the

transactions.   *See* Fed. R. Evid. 404(b); *United States v. Foster*, 664 F. App'x 644, 646 (9th Cir. 2016) (previous drug transactions with the confidential informant admissible); *United States v. Vo*, 413 F.3d 1010, 1018 (9th Cir. 2005) ("evidence of a defendant's prior possession or sale of narcotics is relevant under Rule 404(b) to issues of intent, knowledge, motive, opportunity, and absence of mistake or accident in prosecutions for possession of, importation of, and intent to distribute narcotics.")

The United States further intends to introduce physical evidence of the seized heroin through TFO Aldridge, along with the images of the $5000 cash used in the first controlled buy; $1300 cash used in the second controlled buy; and approximately $34,922 cash found at the location of the controlled buy.   The United States also intends to introduce some of the audio recording from the June 26, 2020 controlled buy through this witness.

### 2.  Sarah North

Special Agent Sarah North will testify to her participation in the two controlled buys and the ways she supported TFO Aldridge during the investigation of defendant. SA North will therefore testify to her role and actions during the operations, including but not limited to searching Arthur and/or her car before and after the controlled buys.

### 3.  Gregory Witte

Sergeant Gregory Witte will testify to his involvement in the two controlled buys and ways in which he supported TFO Aldridge as part of the surveillance team during both operations.   Witte will therefore testify to his role and actions during the operations,

including but not limited to his observations at the buy location on both dates. He will further testify about the steps he took to monitor the activities of the participants before, during, and after both controlled buys, including steps taken to ensure the integrity of the investigation. Witte will also testify to his role at the execution of the search warrant on July 15, 2020 at defendant's residence.

### 4. Robert Blanton

Detective Robert Blanton will testify to his involvement in the June 17, 2020 controlled buy where he supported TFO Aldridge as part of the surveillance team. Blanton will testify to his role and actions during the operation, including but not limited to his observations at the buy location. He will further testify about the steps he took to monitor the activities of the participants before, during, and after both controlled buys, including steps taken to ensure the integrity of the investigation such as searching Arthur's car before and after the buy operation. Blanton will further testify about the circumstances and steps he took to prepare and package the purchased heroin, and steps he took to ensure the integrity of the evidence in tag #1237147 prior to its storage in evidence and testing by the State of Alaska lab.

Blanton will also testify about his participation in the execution of the search warrant at defendant's residence, unit C23, at 3101 Peck Avenue, and he will testify about his observations and role as the evidence custodian taking custody of items seized and logging them into evidence subsequently, including but not limited to the $34,922 in

13

cash located throughout the residence.   Blanton will also testify to other items observed during the search warrant.

### 5.  Mikel Vondolteren

Detective Mikel Vondolteren will testify about his involvement in the two controlled buys where he supported TFO Aldridge, including but not limited to his observations at the buy location.   He will further testify about the steps he took to monitor the activities of the participants before, during, and after both controlled buys, including steps taken to ensure the integrity of the investigation.   He will also testify to the handling of the pre-recorded buy funds that he obtained for both buys.   Vondolteren will also testify regarding his participation in the execution of the search warrant at defendant's residence, unit C23, at 3101 Peck Avenue, and he will testify about his role finding and seizing contraband, including a sum of $4000 cash, marked as Evidence Tag # 1237621 (referenced as Bates "McAnulty_00001159-1242.")

### 6.  Jesse Kinsland

Detective Jesse Kinsland will testify to his involvement in the June 26, 2020 controlled buy where he supported TFO Aldridge.   Kinsland will testify about his role and actions during the operation, including but not limited to his observations throughout the investigation.   He will further testify about the steps he took to monitor the activities of the participants before, during, and after both controlled buys, including steps taken to ensure the integrity of the investigation such as searching Arthur's car before and after the buy operation.   Kinsland will testify about the circumstances he took to prepare and

package the purchased contraband, and steps he took to ensure the integrity of the evidence in tag #1237093 prior to its storage in evidence and testing by the State of Alaska lab.

Kinsland will testify further about his participation in the execution of the search warrant at defendant's residence, unit C23, at 3101 Peck Avenue, and he will testify about his role there in searching the second-floor bathroom and hall closet. Kinsland will also testify to locating a black backpack with a small food processor and container of MSM in it, testifying that the MSM product is commonly used by drug suppliers as a cutting agent in the distribution of controlled substances.

### 7. Damon Jackson

Officer Jackson will testify about his role in the July 15, 2020 traffic stop and detention of the defendant, and the circumstances surrounding his involvement in this case. Officer Jackson will also testify to the items seized as a result of the defendant's arrest, including an Apple iPhone (Evidence Tag # 1241082) and $816 cash (Evidence Tag # 1241083), that he logged into evidence.

### 8. Joshua Vance

Vance will testify about his role in the execution of the search warrant at defendant's residence on July 15, 2020. Vance will testify about searching a spare bedroom that was designated as "Room 9" where he found over $30,000 in cash (evidence tag numbers 1237121, 1237122, 1237626) as well as documents that belonged

to Jason McAnulty and other documents indicative of drug distribution (evidence tag 1237125).

### 9. Mike Swanson

Mike Swanson will testify to his role at APD and his Cellebrite analysis of an Apple iPhone (Evidence Tag # 1241082)/ He will further testify to the information retrieved as a result of that analysis, including any device data he retrieved from the SIM card identifying defendant as the phone's owner and the associated phone number as (907) 205-1906 (the defendant's number).

### 10. Carlie Glaister

Carlie Glaister, formerly Carlie Bailey, is a Forensic Scientist II with the State of Alaska Department of Public Safety's Scientific Crime Detection Laboratory in Anchorage, Alaska. Glaister will testify consistent with the controlled substance analysis report and bench notes about the type and quantity of the substance labeled as Item # 1237093 and Item # 1237147 in Laboratory Number 20-05713, which was the heroin purchased from McAnulty on June 17, 2020 and June 26, 2020. Glaister will also testify about her qualifications, duties in her assigned role, and the circumstances related to her analysis in Laboratory Number 20-05713. She will also explain the process in which she received the packaged heroin for testing, including the condition in which she received both packages. The United States intends to introduce the report produced as a result of her analysis of the narcotics. The United States will separately submit a Motion in Limine to admit her expert testimony.

11. **Mabelline Arthur**

Ms. Arthur will testify about her involvement as a confidential source in this case, including her meetings, discussions, and transactions with defendant Jason McAulty, who she knew also as "Kevin" and "Snoop." Specifically, she will testify about the June 17, 2020 and June 26, 2020 purchases of heroin from defendant. This testimony will include the defendant's prior discussion and sale of heroin to Ms. Arthur, including any customary price and cost for set quantities of heroin that she paid for his supply of heroin. Ms. Arthur will testify about the operations and her involvement before, during, and after the controlled buys. She will explain her conversations with the defendant leading up to and including the days of the controlled buys, including testimony that she gave cash in the amounts of $5000 and $1300 to the defendant in exchange for four ounce and about an ounce of heroin, respectively.

The United States intends to introduce or discuss audio recording and text messages of the above transactions and discussions during Ms. Arthur's testimony.

**E. EXHIBITS**

**1. Audio Recording from June 26, 2020 Controlled Buy**

The United States will introduce and play for the jury clips from a recorded conversation between Ms. Arthur and the defendant on that occurred on June 26, 2020. The entirety of the conversation is approximately 26 minutes; the United States intends to introduce the entire recording but only publish a portion of the recording containing the transaction at issue. The remainder of the recording is background noise or

17

introductions by TFO Aldridge which has little evidentiary value. As a demonstrative aid for the jury, the United States will publish the clipped portion paired with a paper transcription for the jurors and court. The United States does not intend to admit the transcripts into evidence. This transcript has been discovered to the defense.

### 2. Physical Evidence Seized

The United States intends to introduce the seized heroin and any packaging. The United States will instruct its agents to appropriately prepare the exhibits for safe and proper display to the jurors. The United States may also seek to admit photographs of the heroin and packaging

### 3. Images of Cash Used for Purchase

The United States intends to introduce an image of the $5000 and $1300 USD cash ("buy funds") that the TFO Aldridge provided to Ms. Arthur to purchase the heroin from defendant, including each bill's serial number.

### 4. Lab Report

The United States seek to introduce the report of the lab analysis performed by Forensic Scientist Carlie Glaister to the jurors. This document, which summarizes and distills voluminous data of the chemical analysis, will be authenticated and explained as part of her expert testimony.

### 5. Phone Records

Toll records from Verizon telephone service provider relating to calls and texts made by the defendant to or received from Ms. Arthur may be admitted to further

18

describe their communication leading up to and following their meetings in June 2020.
These records, which the United States expects will comply with the requirements of
Federal Rule of Evidence 803(6) as shown by a certification of the custodian, are
self-authenticating under Rule 902(11).

### 6. Images of Text Messages

The United States seek to introduce the images of text messages between
defendant and Ms. Arthur as follows:

> Bates "McAnulty_00000771" – text exchanges between June 7 – June 10, 2020;
> Bates "McAnulty_00000772" – text exchanges on June 12, 2020;
> Bates "McAnulty_00000773-774" – text exchanges on June 13, 2020;
> Bates "McAnulty_00000779" – text exchanges on June 25, 2020;
> Bates "McAnulty_00000781" – text exchanges on June 26, 2020;
> Bates "McAnulty_00000784" – close up of text exchanges on June 26, 2020.

See Exhibit 1.

These text messages are inextricably tied to the narcotic transaction in this case,
showing the drug supplier-buyer relationship between defendant and Ms. Arthur.   They
further demonstrated both Ms. Arthur and defendant's mutual knowledge and
understanding about their specific discourse in discussing heroin transactions.   Aside
from several communications to meet up to buy heroin from defendant in the weeks
leading up to the first controlled buy, Ms. Arthur and defendant even discussed issues
with the quality of heroin she recently obtained from defendant and how she would take
the "L" (i.e. loss on profit).   These text messages do not constitute other bad acts, but
rather evidence that is part and parcel of the lead up to the controlled buys as it provides
context and explain how Ms. Arthur became a source for law enforcement.   Even if this

Court treats this evidence as other bad acts, an analysis under the rules would allow their admission.   *See* Fed. R. Evid. 404(b); *United States v. Foster*, 664 F. App'x 644, 646 (9th Cir. 2016) (previous drug transactions with the confidential informant admissible); *United States v. Vo*, 413 F.3d 1010, 1018 (9th Cir. 2005) ("evidence of a defendant's prior possession or sale of narcotics is relevant under Rule 404(b) to issues of intent, knowledge, motive, opportunity, and absence of mistake or accident in prosecutions for possession of, importation of, and intent to distribute narcotics.")

### 7.  Images of Drug Packaging Materials and Indicia of Distribution

The United States seek to introduce the images of drug packaging materials and other indicia of distribution, such as images of plastic bags and the scale found in the kitchen, which is the location where the drug transaction took place with Ms. Arthur and where she observed defendant weighing out the purchased heroin.   These images were captured during the search of defendant's residence on July 15, 2020 at 3103 Peck Avenue, unit C23 (i.e. the location of both controlled buys).

### 8.  Images of Cash Seized at Residence

The United States seek to introduce the images of cash seized at the defendant's residence amounting to approximately $34,922, referenced by Bates "McAnulty_00001074-1244," including their serial numbers.   These monies were seized during the search of defendant's residence on July 15, 2020 at 3103 Peck Avenue, unit C23 (i.e. the location of both controlled buys).   This amount of money in cash is further evidence of funds received as a result of illicit narcotics activity.

## F. LEGAL/EVIDENTIARY ISSUES

### 1. Stipulations

At this time the United States has conferred with defense regarding stipulations but have not reached any stipulations.

RESPECTFULLY SUBMITTED on March 14, 2022, in Anchorage, Alaska.

Respectfully Submitted,

JOHN E. KUHN, JR.
Acting United States Attorney

By: *s/ George Tran*
GEORGE TRAN
Assistant United States Attorney

## CERTIFICATE OF SERVICE

I hereby certify that on March 14, 2022, a copy of the foregoing was served electronically on:

Lance C. Wells, Esq.

*s/ George Tran*
Office of the United States Attorney

21